### DWIGHT HINCKLEY LUMBER CO v SEALY

Ohio Appeals, 1st Dist, Hamilton Co
No 3611. Decided April 14, 1930

Hunt, Bennett & Utter, Cincinnati, for Lumber Co.

Bolsinger & Black, Cincinnati, for Sealy.

HAMILTON, J.

The main controversy between the parties was whether or not the Hinckley Lumber Company was entitled to a credit on its account by reason of a check for $983.02, made payable to the Rambo Lumber Company, and delivered to one T. B. Johnson, which Johnson cashed, retaining the proceeds. The court below found that the Hinckley Lumber Company was not entitled to such credit as against its debt to the Rambo Lumber Company.

The Dwight Hinckley Lumber Company claims to be, entitled to the credit for the amount of the check by reason of the fact that Johnson was the duly authorized agent of the plaintiff's administrator to collect for the Company at the time the check was delivered to him; that it had knowledge of a contract between Johnson and C. J. Rambo, operating as the Rambo Lumber Company, entered into on the 19th day of April, 1921, by which Johnson was empowered to collect accounts. This agency contract provided in part as follows:

" x x x the said T. B. Johnson is employed as Manager of said business and his duties will be the buying and selling of lumber, making collections, supervising the office of Rambo Lumber Company and the general looking after of all of the business of said lumber company, and keeping up with the details of said business. He shall have supervision of the office, writing of the letters and shall have authority to sign checks in payment of all expenses of the business and for lumber. His acts, however, to be subject to approval of the said C. J. Rambo. x x x x

"The said Rambo is to pay the said Johnson for his services the sum of $250.00 per month x x x

"It is further agreed that should the business prosper and make more than the sum of $250.00 net per month, above the expenses, that is, after paying interest on borrowed money, office expenses, rents, carriage expense and the salary of $250.00 to Johnson and all other expenses in connection with the running and operating of said business, then if the said business should make more than the sum of $250.00 outside of the expenses aforesaid, then all sums of net profits as aforesaid, x x x x will be divided and one-half of said sum will be paid the said T. B. Johnson as a bonus for his diligent and faithful services, payable at the expiration of this contract."

The contract provided that Johnson's term of work was to begin May 1st, 1921, and to end January 1st 1922. By the terms of the contract either party was given the privilege of renewal of the contract with the consent of the other party for an additional twelve months' period.

It is claimed that the Hinckley Lumber Company had no knowledge of any revocation of this authority at the time of the delivery of the check and acted in good faith in delivering the check to Johnson as credit on its indebtedness to the Rambo Lumber Company.

It appears that shortly after the death of C. J. Rambo, the Dwight Hinckley Lumber Company was notified of his death. This is indicated by the Lumber Company's letter of sympathy of December 15, 1921.

It appears that upon the death of C. J. Rambo, J. R. Sealy, a son of the plaintiff administrator took charge of the business for the surviving widow of Rambo, and the business was continued and some sales made to The Dwight Hinckley Lumber Company.

On March 7, 1922, letters of administration were taken out by C. S. Sealy; the plaintiff in this ase, and the father of the surviving widow of C. J. Rambo, who continued to conduct the business under the name of Rambo Lumber Company and under the management of J. R. Sealy.

Johnson continued with the Company under the new arrangement, made one or more sales of lumber to The Dwight Hinckley Lumber Company, which were accepted by the new management.

It is suggested in the brief of plaintiff in error that the contract was extended for a period of one year, but we find nothing in the record to sustain this claim. In fact, the evidence of C. S. Sealy is to the effect that no such extension was made; that the new management simply retained Johnson as bookkeeper and lumber inspector and denied repeatedly that Johnson

was authorized to make any collections or contracts on behalf of the Company under the new management; that J. R. Sealy was the general manager in control of these matters. Moreover, the contract between Rambo and Johnson was an agency contract, which was terminated by Rambo's death on December 9th, 1921, and in any event, under its express terms, the contract would terminate January 1, 1922, unless extended by the parties. Since Rambo was dead and there was no one in authority to extend the contract, there could be no extension.

The question would seem therefore to turn on whether or not the holding out by the new management of Johnson as its agent justified the Hinckley Company in delivering the check to him, relying on the authority which existed under the agency contract. In other words, would continuing Johnson in his employ estop plaintiff below from denying the authority of Johnson to make the collection?

Such might be the case were it not for a letter under date of November 13, 1922, and a telegram of November 25, 1922, which The Dwight Hinckley Lumber Company admits having received, and they are in the record.

The letter of November 13, 1922, is as follows:

"The Dwight Hinckley Lumber Co.,
Gentlemen:

"Due to the death of Mr. C. J. Rambo, the management of the Rambo Lumber Company will be changed to J. R. Sealy, a brother-in-law of Mr. Rambo, who will be the general manager.

"We have just purchased a fifteen foot tract of cypress, poplar, pine, and other Southern Woods. We are now erecting a bandmill on this tract of timber and hope that we will have the pleasure of doing some business in the future with you.

"Due to the fact that the administrator of the Rambo estate will have to have an audit made on the books of the Rambo Lumber Company, and wind up the old business, I will appreciate very much if you will have your bookkeeper draw a statement of the books, up to date, and mail to us, showing from where lumber was shipped, the original cost, the date when checks were mailed. This will greatly assist us in making our audit.

"Trusting that this is not asking too much of you, and that we will have the pleasure of doing some business with you in the future, we are,

Yours very truly,
RAMBO LUMBER COMPANY,
Per, J. R. Sealy, Mgr."

The telegram is as follows:
"Edison, Ga., Nov. 25, 1922.
Dwight Hinckley Lumber Co.,
Cincinnati, Ohio.

IN PAYING ACCOUNT DUE RAMBO LUMBER CO. SEND CHECK DIRECT TO OFFICE EDISON.
THE RAMBO LUMBER CO. MRS. RAMBO."

Notwithstanding this letter and telegram, on December 6th, 1922, The Dwight Hinckly Lumber Company issued the check in question and delivered the same to Johnson.

We are of opinion, under the state of the record, as herein indicated, that the trial court could well find that the issuing and delivery of the check to Johnson could not be properly credited on its debt due to the Rambo Lumber Company, and there was no error in so finding. The Dwight Hinckley Lumber Company was charged with knowledge that the agency contract between Rambo and Johnson terminated with Rambo's death on December 9th, 1921. It further knew that the contract expired from its own provisions January 1, 1922. It knew that the Rambo Lumber Company was operating under new management. It knew that Johnson was no longer the manager. The Hinckley Lumber Company had the agency contract before it, and it knew that Johnson was only empowered to collect by reason of being manager, and that that management no longer existed. If the Hinckley Lumber Company could at any time have relied on the holding out by the Rambo Lumber Company of Johnson as its agent, that reliance could no longer exist after the receipt of the letter and telegram in question.

The argument and the authorities cited in the brief of counsel for plaintiff in error are mainly based on the proposition that the agency contract between Johnson and Rambo had been in fact continued for another year by the parties. As heretofore stated, this was not the case.

The issue made upon the cross-petition, setting forth the claim of damages for breach of contract in failing to make deliveries was considered by the court on the evidence bearing on those issues. The evidence was in sharp conflict as to who first breached the contract. The evidence is conflicting as to amounts of lumber ordered, the understanding of the terms of settlement, the time of payment, the dis-

counts, and many other questions concerning lumber sales:

It would not be profitable to analyze the evidence. It is sufficient to say that there was evidence offered tending to support the claims of both the plaintiff and defendant.

The verdict will not be disturbed on the ground of the weight of the evidence.

Finding no prejudicial error in the record, the judgment is affirmed.

Cushing, PJ, and Ross, J, concur.